## Case No. 13,889.

### In re THOMAS.

[1 Dill. 420.] [1]

Circuit Court, D. Kansas. 1871.

WITNESS FEES—ATTACHMENT—MILEAGE.

1. A witness in a civil cause in the United States courts, who, at the time of the service of the subpœna, demands his traveling fees and his fee for one day's attendance, cannot be attached for contempt, if he fails to obey the writ.

2. Mileage of witness. See note, infra.

Mr. Fenlon, for the witness.
Mr. Lecomte, contra.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

---

## Case No. 13,890.

### In re THOMAS.

[3 N. B. R. 38 (Quarto, 7).] [1]

District Court, D. New Jersey. June 22, 1869.

Before FIELD, District Judge.

---

## Case No. 13,891.

### In re THOMAS.

[11 N. B. R. 330; [2] 7 Chi. Leg. News, 187.]

District Court, E. D. Missouri. Feb. 18, 1875.

BANKRUPTCY — ADJUDICATION — MOTION TO SET ASIDE—ACTS OF BANKRUPTCY—CREDITORS —NOTICE.

1. Where a petition by a creditor for an adjudication is filed, and the debtor appears and confesses the acts of bankruptcy charged, and under section 43 of the bankrupt act [14 Stat. 538], a trustee is appointed, a creditor who appears and proves his debt, cannot after the death of the bankrupt, and the rights of other creditors have intervened, be allowed to appear and set aside the adjudication.

[Cited in Re Herman, Case No. 6,405; Re Meade, Id. 9,370; Allen v. Thompson, 10 Fed. 124.]

2. Under the act of March 2, 1867, a creditor not appearing to the petition of adjudication, is not estopped from denying the acts of bankruptcy charged, so far as they affect him with notice.

On petition of Broadway Savings Bank to vacate adjudication of bankruptcy.

---

[1] [Reprinted by permission.]
[2] [Reprinted from 11 N. B. R. 330, by permission.]

H. A. Clover. for Broadway Savings Bank.
J. G. Chandler, for judgment creditors.
C. C. Whittelsey and R. H. Spencer, for John G. Priest, trustee.
Hill & Bowman, for Thomas' estate.

TREAT, District Judge. On the 25th day of April, 1874, the Mercantile Bank of St. Louis filed a petition in bankruptcy against James S. Thomas, averring that he was a trader, and that he had suspended and not resumed payment of his commercial paper, etc. About a half hour subsequently said Thomas voluntarily appeared in court and confessed in writing the allegations of the petition. He was thereupon adjudged a bankrupt. At the first meeting of creditors they elected to proceed to wind up the estate under the provisions of the 43d section of the bankrupt act. On May 30, 1874, the Broadway Savings Bank proved its claim against the estate, but not as secured. It is said to have received within four months of the adjudication, as collateral to an existing debt, an assignment by the bankrupt of a policy on his own life for his own benefit.

The bankrupt died September 26, 1874. A suit was brought October 24, 1874, by the trustee in bankruptcy against said bank to have said assignment of the policy set aside, and the proceeds of the same applied to the general estate. Answer and replication were duly filed in that case, and the taking of testimony commenced. On the 28th day of January, 1875, said bank filed a petition to vacate said adjudication of bankruptcy and all proceedings thereunder, on the ground that said adjudication was fraudulently procured through collusion between the petitioning creditor and the debtor; said Thomas not being a "trader," and not having suspended payment of any of his "commercial" paper, within the meaning of the law, as was well known to both of the parties.

For the purposes of the question under review, it may be further stated that several judgment creditors who have not yet made formal proofs of their demands, and some who have, and who have liens under their judgments rendered before proceedings in bankruptcy, are prepared to join the Broadway Savings Bank in this proceeding. Thus the question involved should be considered free from the objection that the Broadway Savings Bank had waived its supposed security by proving its demand as unsecured, probably not attaching much value to the policy in May, and not being willing to keep the same alive at its own expense. Yet it claims the benefit thereof on the death of Thomas in September following. Other suggestions as to the estoppel of the Broadway Savings Bank by its participation in proceedings under the adjudication in bankruptcy may also be omitted so far as they are special to that bank.

On filing the petition to vacate, the Mercantile Bank and the trustee under the 43d section were cited in to show cause. It was suggested that the issues of fact made by the pending petition and answers thereto should be referred for the purpose of taking testimony; but at the instance of the court the respective counsel were heard at length on the main question, viz.: Whether at this stage of the case, after adjudication had, any of the creditors can cause the judgment to be vacated and all proceedings under it set aside and annulled on the grounds alleged. It must be observed that if the debtor had not confessed his bankruptcy it would have been in the power of any other creditor to come in and join, alleging other acts of bankruptcy, which the answers to the pending petition now aver had been committed and would have been thus presented. But for the death of Thomas before this petition in January, 1875, it might be in the power of the court, if the adjudication were set aside, to let the original petition by the Mercantile Bank stand and other creditors join, averring other acts of bankruptcy. Through the delay in moving to vacate, the rights of all designed to be protected by the act may be seriously affected. Those who have secured preferences in violation of the bankrupt law, are the only persons to gain by annulling all proceedings in bankruptcy; although the judgment creditors insist that they, by the course taken under the 43d section, are debarred from enforcing their demands at once.

Various authorities are cited under the English bankrupt act to establish the doctrine that the judge, at the instance of any creditor, may at any time supersede the commission in bankruptcy when improperly issued. The case of In re Morris' Estate [Case No. 9,825], under the act of 1800 [2 Stat. 19], is also referred to. The English cases, and those which might have arisen under the act of 1800, can hardly have much application to proceedings either under the act of 1841 [5 Stat. 440], or of 1867; for both the English system and that prescribed by the act of 1800 were, so far as the question now to be considered is involved, wholly dissimilar to the later acts. The case before Judge Hopkinson concerning the Morris estate, as he rightly remarked, was wholly unlike any one previously known, and was not likely ever to occur again. In his exhaustive opinion he reached the important conclusion, that neither the chancellor in England nor a United States judge had, in bankruptcy matters, any powers other than those arising from the bankruptcy statutes; but he held that in the case before him, where creditors, and all other persons concerned, had slept on their rights for about twenty-five or thirty years, and then, after legal notice, never appeared when cited in to show cause why the abandoned estate, which had been nearly destroyed by the gross laches, should not be saved for the benefit of the Morris family, it was not only within his authority, under

the act of 1800, but his duty, to set aside the abandoned proceedings. That decision does not fairly involve the question now before this court; for not only the peculiarities of the case itself, but the provisions of the act of 1800, are entirely different from what is now under consideration. The act of 1841 is in some respects like that of 1867, but not in all. The provisions of the 7th section of the act of 1841, as to proceedings to force debtors into bankruptcy, are very dissimilar to compulsory proceedings under the act of 1867. Hence the rulings in Shawhan v. Wherritt, 7 How. [48 U. S.] 627, are not, in all their details, applicable to like cases arising under the existing statute. The act of 1841 caused notice to creditors to be given before adjudication; and hence, as they were cited in, they were held concluded as to the acts of bankruptcy alleged. The act of 1867 requires no such notice; hence other creditors than the one petitioning are not estopped from disputing that the special act of bankruptcy on which the adjudication was had, does not so far as their claims are concerned, conclude their rights.

Under the act of 1841, two decided cases are referred to,—one by Justice Story (Dutton v. Freeman [Case No. 4,210]), wherein he held that the only person who could contest the allegations for compulsory bankruptcy was the alleged bankrupt. The other case is that decided by Judson, U. S. district judge (In re Heusted [Id. 6,440]) in which it was held that when the alleged bankrupt did not appear to contest, the creditors, who it was alleged had gained a fraudulent preference, might appear and defend. In Shawhan v. Wherritt, supra, creditors were held concluded by the adjudication; so that whether the opinion of Justice Story, or of Judge Judson, were, in the light of the views expressed by the United States supreme court, to prevail under the act of 1841, none of those decisions give material assistance to the present inquiry. Under the act of 1867, a debtor within the prescribed conditions can be forced into bankruptcy, or he may voluntarily apply for the benefit of the act. At the date of the institution of proceedings against Thomas, it was competent for him to apply in his own behalf, or if proceeded against by others, to resist or confess, the consequences being the same in each case, so far as his right of discharge was effected. All or any creditors had a right to join in the petition for compulsory bankruptcy; and an adjudication had on the alleged acts of bankruptcy, whether by confession or otherwise, does not bind, as to the facts so adjudicated, other creditors who did not, and could not, under the act of 1867, intervene between the petitioning creditors and the alleged bankrupt, to prevent the adjudication of bankruptcy. So far as their demands, or claims, are concerned, inasmuch as under the act of 1867 they are not cited in at that stage of the proceedings, the adjudication as to said

alleged acts of bankruptcy, so far as their claims are to be proved against the bankrupt's estate, is inter alios acta. It follows, therefore, that whether the views expressed by Justice Story or Judge Judson were correct in the light of Shawhan v. Wherritt [supra], under the act of 1841, the points involved in this case are unaffected. Two cases are referred to, viz.: In re Walker [Case No. 17,061]; and In re Goodfellow [Id. 5,536]. In each of these cases the bankrupts had made voluntary application for supposed fraudulent purposes as against their creditors. The court permitted other creditors to intervene to vacate the adjudication. The court entertained their motion so as to prevent a contemplated fraud, as was supposed, against the provisions of the bankrupt act. Without discussing the principles on which those cases rest, it must suffice to rule that they are inapplicable to this. In them, persons who voluntarily claimed the benefit of the act were, as in all such cases, ex parte, adjudged bankrupt, whereby in the one case the settlement of the estate would have been drawn into an improper district, and in the other, the debtor would have defrauded his creditors by leaving his property conveyed, in a foreign country, in the hands of those who, if in this country, would have been compelled to surrender the same to the assignee. Those were, therefore, cases of an attempt, ex parte, by a debtor to commit a fraud or palpable wrong in violation of the bankrupt act on his creditors.

In the case now before this court, whether the debtor was forced into bankruptcy, or voluntarily applied, he was a resident of this district, and his estate, when adjudged a bankrupt, was to be administered here. It cannot be denied that he could have been adjudged a bankrupt on his own petition, and his confession, upon a petition filed against him by a creditor, is substantially a voluntary proceeding on his part. If the act of bankruptcy confessed was not true, no one, save himself, could be injuriously affected thereby, unless such other person had violated the provisions of the bankrupt act. It is difficult to understand why a person cannot confess himself a bankrupt, and thus subject his estate to the law for the benefit of his creditors, when his confession, as to said act of bankruptcy, cannot affect any of his creditors, other than those who have gained illegal preferences. A modified rule might obtain since the last amendment of the act, but, as it stood in April last, it is not seen why a court should interpose, at the instance of a creditor, to set aside an adjudication of bankruptcy made on confession in an involuntary proceeding, in order, solely, that some creditors may obtain advantage in contravention of the bankrupt law. In the case of In re Morris' Estate [supra], Judge Hopkinson laid particular stress upon the extent of the interest the moving creditor had in the proceeding, as well as upon his laches.

A court should look, also, to the character of the interest prompting the motion. If the bankrupt act is, on all matters within its purview, the supreme law, no court should lend a willing ear to one who seeks to escape the force of its provisions; nor should it, after laches, when it is impossible, as in this case, to do justice to all, entertain and uphold a motion to the injury of the body of creditors for the benefit of one or more who desire peculiar advantages which the paramount law of the land is designed to prevent. From the delays in this case, it is apparent that if the adjudication and all proceedings thereunder are vacated, gross wrong to many creditors will follow. The death of Mr. Thomas has prevented the possibility of restoring all the creditors to their original status. Hence it is held, that no creditors can now be heard to vacate the judgment on the grounds alleged. It is immaterial whether the mercantile bank and Mr. Thomas did collude to have the adjudication made, for Mr. Thomas could have been adjudicated a bankrupt on his own motion, and the same results would have followed as now exist. The confession as to the special facts alleged as an act of bankruptcy, and, indeed, the valid existence of the petitioning creditor's alleged claim, conclude none of the other creditors.

A few prominent suggestions are thus hurriedly made to indicate some of the many grounds upon which the court rests its decision. It cannot order a reference to a master to take proofs, nor entertain the petition in the state of the record in this case. It, therefore, dismisses the petition with costs, it being considered that the record of the case against Thomas, and the proceedings therein, are before the court for the purpose of this decision.